# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

**v.**                                         Civil Action No.: 2:26-CR-00016

**ROSEMERY MORALES-MEJIA.**

## MOTION TO SUPPRESS STATEMENTS AND DISMISS INDICTMENT

Defendant Rosemery Morales-Mejia respectfully moves to suppress all custodial statements allegedly obtained while she was held in ICE civil detention and to dismiss the indictment that rests upon those statements.

This prosecution is the direct product of a seizure and detention method this Court has already determined to violate the Constitution. In *Urquilla-Ramos v. Trump*, No. 2:26-cv-66, 2026 WL 475069 (S.D.W. Va. Feb. 19, 2026), this Court held that masked, anonymous federal agents operating without warrants and without visible accountability violated the Fourth Amendment and the Due Process Clause when they seized and detained an immigrant in this district.

The seizure in this case arose from an ICE raid on January 16, 2026, at the Rio Grande Mexican restaurant in Nitro, West Virginia. Armed and masked agents wearing military-style gear stormed the restaurant and a nearby residence.

No business records were seized from the restaurant. Only people. Nine non-violent human beings, including a pregnant woman, were seized without arrest warrants on January 16, 2026, and brought to a DHS facility in Poca, West

1

Virginia. There, they were subjected to poor custodial conditions of confinement, including cold holding cells without even a mattress. While confined in these conditions, agents forced confessions from each worker.

The forced confessions were the basis of the charges eventually brought against them. Despite being seizing nine workers on January 16, 2026, no arrest warrant was issued for the arrest of each worker until February 3, 2026. That meant that no initial appearance occurred and no attorney consultation occurred for well over three weeks following their apprehension.

The United States Constitution does not permit civil detention to be used as a mechanism for extracting criminal confessions under coercive conditions. For that reason, all evidence in this case must be suppressed, and the case must be dismissed with prejudice.

## I. THE SEIZURE VIOLATED THE FOURTH AMENDMENT

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has repeatedly held that the "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Immigration enforcement is not exempt from the Fourth Amendment. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *INS v. Delgado*, 466 U.S. 210, 216 (1984). Even civil seizures must be reasonable.

In *Urquilla-Ramos,* this Court held that masked, anonymous agents conducting warrantless civil immigration seizures offend the Fourth Amendment's guarantee of security and accountability. 2026 WL 475069, at *4. This Court emphasized that constitutional authority must be traceable, identifiable, and subject to review at the moment it is exercised. *Id.* at *7.

Defendant Morales-Mejia was seized with the same enforcement action that this Court condemned in that opinion. No criminal arrest warrant existed. No judicial officer had found probable cause of a criminal offense for an arrest. Defendant Morales-Mejia was taken pursuant to a civil immigration action by masked agents operating without visible accountability.

This investigation began in December of 2025 as a civil/administrative I-9 audit.[1] In response to the I-9 audit, the Rio Grande restaurant provided all documentation it had concerning the employment of its employees. Upon review of the documentation, the government concluded that some of the documents provided were fake and applied for search warrants to search the Rio Grande restaurant and nearby residence. *See* Exhibit 1 (search warrant affidavits).

Despite having no probable cause to charge anyone criminally, which was indicated by the lack of any criminal complaint or arrest warrant on January 16,

---

[1] It is believed that the Rio Grande restaurant was targeted due to its Hispanic ownership and workforce. No neutral basis for initiation of the investigation was provided during discovery.

3

2026, the search warrants attempted to authorize the seizure of human beings as follows:

**Attachment B**

**Items to be Seized**

1.    The person of any identified illegal aliens who are employed by and found at the **BUSINESS LOCATION;**

On January 16, 2026, federal agents swarmed the Rio Grande Mexican restaurant and a nearby residence to execute the search warrants. Despite no indication of a threat of violence, federal agents were armed, dressed in military-style gear, and wearing masks. The following images are from bodycam produced in discovery:

















The search warrant returns from January 16, 2026, indicate that the government seized eight people from the restaurant and one person from the residence. *See* Exhibit 2.

| Return | | |
|---|---|---|
| Case No.: 2:26-mj-00003 | Date and time warrant executed: 01/16/2026; 3:00 hrs | Copy of warrant and inventory left with: Miguel AGUIRRE |
| Inventory made in the presence of: Terrance Taylor | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

1.) Seizure of Rufino Hernandez
2.) Seizure of Pablo Dominguez
3.) Seizure of Jose Alfredo Cruz
4.) Seizure of Rosmery Morales
5.) Seizure of Rosa Shilon
6.) Seizure of Adolfo Marin
7.) Seizure of Manuel Mervin Tzoc
8.) Seizure of Fernando Ruiz

Nothing Further

The seized immigrant workers were then transferred to a facility in Poca, West Virginia, the location of which has not yet been produced in discovery. According to a deposition taken on February 10, 2026, of one of the seized

workers, Manuel Marvin Tzoc Tzep, the workers were subjected to poor conditions of confinement following their seizure:

> Q. And what happened after you were arrested?
>
> A. I was brought here to the jail. They left us there all night. They didn't even give us any covers, not even a mattress. We were --- we went through cold. My bones were hurting me from laying there on the floor and there where people sat. It was very cold. They gave us no blankets, no mattress. We just went through a night of cold. Like at 7:00 in the morning, we were moved to the gym. ... And then our clothing was changed and we were brought here. Then they gave us breakfast. Then, like, at 7:00 or 8:00, we were given like a cover. Then all of the night, it was the same way, just a cover and nothing else. You can't get warm. Then on the third day, they brought a mattress to us. And on the third day was when we were actually put into a cell. I'm not favoring anyone and I'm not defending anyone. I'm just telling you the truth. If you want the truth, I'm telling you the truth.

Exhibit 3 (Feb. 10 deposition of Manuel Marvin Tzoc Tzep).

While confined in these conditions, federal agents conducted custodial interviews of all nine seized workers. *See* Exhibit 4 (combined reports of interviews). The interviews were not recorded and were conducted through a Spanish interpreter, who was an employee of the DHS. *See id.* According to the reports, everyone who was interviewed confessed to being in the country illegally and/or obtaining false documents from various individuals. *See id.*

Four days after the confessions, the government charged six seized workers with offenses related to false documents on January 20, 2026. *See U.S. v. Pablos-Miguel* (No. 26-cr-11); *U.S. v. Cruz-Perez* (No. 26-cr-12); *U.S. v. Dominguez* (No.

26-cr-13); *U.S. v. Shilon-Hernandez* (No. 26-cr-14); *U.S. v. Hernandez* (No. 26-cr-15); *U.S. v. Morales-Mejia* (No. 26-cr-16). However, no arrest warrant was issued at this time.

The workers remained in federal custody without hearing or access to an attorney for weeks following their seizure. Arrest warrants for the seized individuals did not issue until February 3, 2026, eighteen days after they were taken by masked federal agents. On that date, the government indicted the workers with felonies for falsifying documents under 18 U.S.C. § 1546(a). Although grand jury transcripts have not yet been produced, it is likely that the government relied heavily upon the confessions in each case to indict the workers. Most of the six immigrant workers did not receive an initial appearance until February 4th or 5th, approximately three weeks after their seizure from their workplace.

The Fourth Amendment draws a clear structural distinction between a warrant to search for property and a warrant to arrest a person. *See Payton v. New York*, 445 U.S. 573, 602–03 (1980); *Steagald v. United States*, 451 U.S. 204, 212–16 (1981). While officers executing a search warrant may briefly detain occupants during the search for officer safety and orderly completion of the warrant, that authority is strictly limited in scope and duration. *See Michigan v. Summers*, 452 U.S. 692, 705 (1981); *Bailey v. United States*, 568 U.S. 186, 201 (2013). Transporting individuals from the scene of a search to a detention facility for

interrogation exceeds the limited authority recognized in Summers and constitutes an arrest requiring probable cause. *See Dunaway v. New York*, 442 U.S. 200, 212–16 (1979).

Here, on January 16, 2026, the workers were seized, transported, and held in ICE custody despite the absence of criminal arrest warrants and before any criminal probable cause had been presented to a judicial officer. The Government's reliance on a document-search warrant to effectuate what functioned as full custodial arrests exceeds the constitutional scope of the warrant and renders the ensuing detention—and all statements derived from it—unlawful.

Defendant Morales-Mejia remained in uninterrupted custody from seizure through interrogation. The statements are fruit of the unconstitutional seizure. Under *Wong Sun v. United States*, 371 U.S. 471, 484–88 (1963), evidence obtained as a direct result of an unconstitutional seizure must be suppressed.

## II. THE CUSTODIAL INTERROGATION VIOLATED THE FIFTH AMENDMENT

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. When the Government subjects an individual to custodial interrogation, it must first provide the procedural safeguards announced in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *See Dickerson v. United States*, 530 U.S. 428 (2000). Even where warnings

are administered, the Government bears the burden of proving that any waiver of rights was knowing, intelligent, and voluntary. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

Here, the reports state in conclusory fashion that each worker—including Defendant Morales-Mejia was "Mirandized" and agreed to speak. Exhibit 4. But there are no signed waiver forms in discovery demonstrating that Defendant knowingly and intelligently relinquished his rights. There is no audio or video recording of the advisement. There is no contemporaneous documentation showing precisely what warnings were given, how they were translated, or whether Defendant affirmatively and unequivocally waived them. Instead, the only evidence of a waiver is a post hoc narrative prepared by the same agents who conducted the interrogation.

The interrogation was conducted through a Spanish-speaking DHS employee. *See id.* There is no recording of the exchange, no certification of the interpreter's qualifications, and no verbatim account of the warnings provided. Where language barriers exist, courts must scrutinize purported waivers carefully to ensure comprehension rather than rote acquiescence. *See United States v. Garibay*, 143 F.3d 534, 538–40 (9th Cir. 1998) (invalidating waiver where language limitations undermined knowing relinquishment); *see also United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010) (Government bears burden to

prove comprehension). The absence of any recording or written waiver makes that burden difficult, if not impossible, to carry.

Even apart from *Miranda*, the Due Process Clause requires that a confession be voluntary under the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). A statement is involuntary if obtained by coercive police conduct that overbears the will of the accused. *See Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). The voluntariness inquiry considers the defendant's custodial status, physical conditions of detention, duration of confinement, access to counsel, and the presence of threats or implicit leverage. *See Withrow v. Williams*, 507 U.S. 680, 693 (1993). The voluntariness inquiry is particularly sensitive where detention is civil in form but criminal in function.

The circumstances here are deeply troubling. Defendant Morales-Mejia was held in ICE civil custody in a cold facility without prompt access to counsel or judicial presentment. She had been seized during a highly militarized raid conducted by masked agents. He was isolated from his family and confronted with the immediate prospect of removal. Under such conditions, the psychological pressure inherent in detention is magnified. When interrogation follows immediately upon such confinement, voluntariness cannot be presumed.

The Supreme Court has long recognized that coercion need not take the form of overt threats or physical force. Subtle pressures arising from detention

conditions can render a confession involuntary. *See Spano v. New York*, 360 U.S. 315, 323 (1959). The question is whether the defendant's will was overborne. *See Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).

The Government chose to interrogate Defendant Morales-Mejia while she was confined under harsh civil detention conditions and before any prompt judicial review. It chose not to record the advisement of rights or the waiver. It chose to rely on translation without preserving a record of what was said. Under the totality of these circumstances, the Government cannot meet its burden of proving a knowing, intelligent, and voluntary waiver of Miranda rights. Nor can it establish that the statements were the product of free and unconstrained choice.

Accordingly, the custodial statements must be suppressed under the Fifth Amendment.

## III. THE GOVERNMENT VIOLATED RULE 5 AND McNABB–MALLORY

Federal Rule of Criminal Procedure 5(a)(1)(A) requires that a person arrested for a federal offense be brought "without unnecessary delay" before a magistrate judge. The Supreme Court has enforced this requirement for nearly a century. *See McNabb v. United States*, 318 U.S. 332, 344 (1943); *Mallory v. United States*, 354 U.S. 449, 453 (1957); *see also Corley v. United States*, 556 U.S. 303, 309 (2009). Once the Government has formed the intent to pursue criminal

13

prosecution, it may not use civil detention as a device to delay presentment. *See Corley*, 556 U.S. at 309. Likewise, civil detention cannot be used to evade prompt presentment once criminal charges are contemplated. *See United States v. Alvarez-Sanchez*, 511 U.S. 350, 357-59 (1994).

Here, Defendant Morales-Mejia was seized by federal agents on January 16, 2026. A criminal complaint was filed on January 20, 2026. Yet Defendant remained in ICE custody without prompt presentment until after February 3, 2026. The Government cannot file a criminal complaint, force confessions, use the confessions to bring more changes, and then warehouse a defendant in civil detention to avoid judicial oversight.

## IV. THE GOVERNMENT'S CONDUCT VIOLATES FUNDAMENTAL DUE PROCESS

Beyond the Fourth and Fifth Amendment violations addressed above, the Government's conduct independently violates the Due Process Clause. The Supreme Court has recognized that there are circumstances in which law enforcement conduct is so egregious that it "shocks the conscience" and violates fundamental fairness. *See Rochin v. California*, 342 U.S. 165, 172 (1952); *Hampton v. United States*, 425 U.S. 484 (1976) (Powell, J., concurring).

In *United States v. Russell*, 411 U.S. 423, 431–32 (1973), the Court acknowledged that outrageous governmental conduct can bar prosecution where law enforcement's actions offend fundamental fairness, shocking to the universal

sense of justice. The Fourth Circuit has recognized this doctrine. *See United States v. Osborne*, 935 F.2d 32, 36 (4th Cir. 1991).

This case presents precisely the type of structural abuse that implicates due process. Masked federal agents executed a raid on a Mexican restaurant. Workers were detained without criminal arrest warrants. While held in civil custody, they were interrogated for criminal prosecution. Their statements were used to file criminal complaints and indictments. Arrest warrants were not issued until weeks later. Initial appearances were delayed. Counsel was absent.

Civil detention was used as a staging ground for criminal confessions. The Government cannot leverage immigration custody as a constitutional no-man's land in which criminal protections are suspended. To allow that tactic would create a dual-track system in which constitutional safeguards apply to some, but not others. The Due Process Clause forbids this.

When executive power is exercised in a manner that collapses the boundary between civil detention and criminal prosecution, strips away judicial oversight, and extracts confessions before the Constitution can intervene, the integrity of the judicial process itself is implicated.

Under *Rochin* and *Russell*, dismissal is warranted.

## V. THE INDICTMENT RESTS ON TAINTED EVIDENCE

The criminal complaint relies explicitly on Defendant's alleged custodial statement. There is substantial reason to believe that the same statement was presented to the grand jury. While an indictment is not automatically invalidated by the introduction of illegally obtained evidence, courts retain supervisory authority to protect the integrity of the judicial process where constitutional violations infect the prosecution. *See United States v. Blue*, 384 U.S. 251, 255 (1966); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).

If the confession is suppressed, the Government must demonstrate independent, untainted probable cause. Absent such proof, dismissal is required. The Court possesses supervisory authority to dismiss an indictment where governmental misconduct threatens the integrity of the judicial process.

## VI. CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, Defendant Morales-Mejia respectfully requests that this Court:

1. Suppress all custodial statements obtained during Defendant Morales-Mejia ICE detention;

2. Suppress all derivative evidence pursuant to *Wong Sun*;

3. Dismiss the indictment, as it rests upon tainted evidence or if the Government cannot establish independent, untainted probable cause;

4.  Order Defendant Morales-Mejia's immediate release from bond supervision upon dismissal of the indictment, as such continued government restriction would perpetuate the constitutional violations identified herein. *See Urquilla-Ramos v. Trump*, No. 2:26-cv-66 (S.D.W. Va. Feb. 19, 2026). Immediate release from supervision is the only remedy sufficient to vindicate the Fourth and Fifth Amendments and to restore the constitutional order; and

5.  Defendant further requests that this Court expressly order that the United States, including the Department of Homeland Security and Immigration and Customs Enforcement, shall not re-arrest, re-detain, or otherwise restrain Defendant, Morales-Mejia, based upon the conduct underlying this dismissed indictment absent a material change in circumstances supported by new, lawfully obtained evidence independent of the unconstitutional seizure and detention previously found by this Court.

**RESPECTFULLY SUBMITTED,**

**ROSEMERY MORALES-MEJIA
DEFENDANT**

**By Counsel,**

/s/Tim C. Carrico
**Tim C. Carrico (WVSB #6771)
CARRICO LAW OFFICES, LC
1554 Kanawha Blvd, East, Ste 100
Charleston, West Virginia 25301
Phone: (304) 347-3800
Fax: (304) 347-3688
Email:** tcarrico@carricolaw.com